70319. GEORGIA INSURERS INSOLVENCY POOL
v. MOORE et al.
(333 SE2d 383)

BIRDSONG, Presiding Judge.

Delores Moore, now Delores Taggert, was insured by Reserve Insurance Company on a policy of automobile liability insurance which contained coverage for personal injury protection (PIP) in the amount

of $5,000. The policy covered the period from October 8, 1977 to October 8, 1978. While the policy was in force, on May 10, 1978, Billy Moore, the son of Taggert, and an insured under the policy, was injured in a collision in the insured vehicle. Reserve made payment to the insured in the amount of $5,000.

On May 29, 1979, Reserve was placed in liquidation after a finding of insolvency by the Circuit Court of Cook County, Illinois. On May 30, 1979, an order by that court fixed the time (May 1, 1980) and procedure, for filing of claims against Reserve. On June 6, 1979, an order appointing the Georgia State Insurance Commissioner as Reserve's Ancillary Receiver for Georgia was entered in the Fulton County Superior Court. See OCGA § 33-37-8. The Commissioner was directed to take possession of Reserve's assets in Georgia, $250,000 in U. S. Treasury Notes, and to notify by mail all persons residing in Georgia "known to have claims against Reserve to file their claims with the Ancillary Receiver on or before *May 1, 1980.*" The Ancillary Receiver was also directed to publish in a newspaper having general circulation throughout the state, for four consecutive weeks, a notice to all Georgia residents "having claims against Reserve" giving the procedure and deadline for filing any claim they might have.

The Fulton County court entered an order, June 6, 1979, stating the "rights and liabilities of creditors, policyholders, shareholders, and all other persons interested in the assets of Reserve Insurance Company shall be fixed as of the date of the entry of the order of liquidation in the Circuit Court of Cook County, Illinois . . . May 29, 1979."

On October 22, 1980, this court issued *Jones v. State Farm Mut. Auto. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623). On August 4, 1981, the Georgia Insurers Insolvency Pool (GIIP) received an undated letter from the defendant's attorney notifying them of the insured's election to retroactively purchase $50,000 in PIP from Reserve. Subsequently, a check was tendered to the GIIP by defendant's counsel for payment of the premium for the increased PIP. The GIIP has a right to bring and defend actions (OCGA § 33-36-6 (a)), and because they have been "inundated" by claimants relying on *Jones v. State Farm*, supra, and *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673), they filed this action for declaratory judgment to determine their liability. Plaintiff's motion for summary judgment was denied and because other claimant's demands for similar claims are being held in abeyance pending outcome of this action, we granted GIIP's application for interlocutory appeal. *Held*:

The GIIP is a board, created by statute (OCGA Title 33, Chap. 36), "to provide a remedy for covered claims under property and casualty insurance policies when the insurer [both foreign and domestic] has become insolvent and is unable to perform its contractual obliga-

tions." OCGA § 33-36-2. When the insurer becomes insolvent, the insurer's coverage becomes "the obligation of the pool for a period of 30 days from the date of such determination or until policy expiration date if less than said 30 days. . . ." OCGA § 33-36-9.

The Fulton Superior Court order of June 6, 1979 fixed the liability of the insurer, and the rights of the insured, as of the date of insolvency, May 29, 1979. This order appears to be lifted directly out of OCGA § 33-37-15, which provides: "The rights and liabilities of the insurer and of its creditors, policyholders, stockholders, members, subscribers, and all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date on which the order directing the liquidation of the insurer is filed in the office of the clerk of the court which made the order, subject to the provisions of this chapter with respect to the rights of claimants holding contingent claims."

We find that an injured insured has a contingent claim against an insurer when the insurer has not complied with the statutory requirement of notice of availability of optional personal injury protection in accordance with OCGA § 33-34-5, as interpreted by *Jones* and *Flewellen*, supra. Such claim is inchoate, imperfect, and unfinished. Optional PIP may be refused only by a signed rejection in writing. *Flewellen*, supra, p. 712. "In the absence of such a rejection, the policy, therefore, provides $50,000 PIP coverage from its inception. The insured has the right to demand and receive the benefit of $50,000 coverage upon tender by the insured of such additional premium as may be due and filing of proof of loss by the injured party." *Flewellen*, supra, p. 712. "*The only requirement for activation of all the terms of the policy is* the *payment of* any additional *premium due and filing of proof of loss* as set forth in Division 1." (Emphasis supplied.) *Flewellen*, supra, p. 715.

Implicit in the holding for activation of the terms of the policy for optional PIP coverage is the perfection of the inchoate claim with the insurer by the tender of the premium and the proof of loss to the insurer, the other contracting party. No attempt was made to perfect the inchoate claim with the insurer in the instant case until after the legal dissolution of the other contracting party. Only the assets of the former insurer are in the hands of the Illinois Receiver and the Georgia Ancillary Receiver. Both of these receivers are creatures of statute and " '[a]n administrative body, created by an act of the legislature, has only such powers as are expressly or by necessary implication conferred upon it.' " *Floyd County Bd. of Commissioners v. Floyd County Merit System*, 246 Ga. 44, 45 (268 SE2d 651). The GIIP has not been authorized to contract for an insurer, or to complete an unperfected contract of insurance, as envisioned by *Jones* and *Flewellen*, supra. However, the obligation of the insurer becomes "the obli-

gation of the pool for a period of 30 days from the date of such determination [of insolvency] or until policy expiration date if less than said 30 days. . . ." OCGA § 33-36-9. We need not reach the determination of whether the GIIP could have entertained an unperfected *Jones* and *Flewellen* claim as those facts are not found within the case at bar. What is important is that the instant claim was not submitted within that 30-day period or the period set by the Georgia court for submission of claims.

The Federal Bankruptcy Act, 11 United States Code § 101 et seq., has similar wording to that found in the Georgia act (OCGA Title 33, Chap. 6), which also deals with liquidation of insolvent corporations or companies. A "claim" is defined, in 11 USC § 101 (4) as a "right to payment, whether or not the right is reduced to judgment, liquidated, fixed [or] *contingent*. . . ." (Emphasis supplied.) "Contingent" means that not all facts essential to creation of liability have yet occurred. Collier on Bankruptcy 925-3, § 925.02. This definition is compatible with our holding hereinabove. Federal Bankruptcy Rule 3003, which does not apply to this action, is indicative of how contingent claims are handled by the federal government. The debtor is required to file a schedule of liabilities under 11 USC § 521 (1), which includes contingent claims. A creditor must also file a proof of claim to participate in the distribution of the debtor's assets, and it must be filed within the time prescribed. Rule 3003 (c) (2); Collier on Bankruptcy 501-3, § 501.01. The fact that a claim is contingent does not render it unenforceable as contingent claims may be estimated under 11 USC § 502 (c). Collier on Bankruptcy 502-28, § 502.02. Our code also requires that claimants be advised that claims must be filed "with him at a place and within the time specified in the notice or the claims shall be forever barred." OCGA § 33-37-16 (b). This section must be considered in pari materia with OCGA § 33-37-22 (a) which provides that "[n]o contingent and unliquidated claim shall share in a distribution of the assets . . . except that such claim shall be considered if properly presented and may be allowed to share where: (1) [t]he claim becomes absolute against the insurer on or before the last day for filing claims against the assets of the insurer; or (2) [t]here is a surplus and the liquidation is thereafter conducted upon the basis that the insurer is solvent."

Although we have held herein that a claim for optional PIP benefits under *Jones* and *Flewellen* is "inchoate, imperfect, and unfinished," such claim does accrue on the date an action on the claim could first be maintained to a successful result, the date of the accident. *Bryant v. Allstate Ins. Co.*, 254 Ga. 328 (326 SE2d 753). Hence, the statute of limitations of six years (OCGA § 9-3-24) begins to run on that date. *Hawkins v. Commercial Union Ins. Co.*, 254 Ga. 331 (328 SE2d 532). In the instant case the accident occurred on May 10,

1978, and *Jones* was not published until October 22, 1980. But, the courts of Illinois and Georgia had established a final date of May 1, 1980, for filing of all claims, including "contingent" claims. See OCGA § 33-37-22 (a). Thus, it is arguable that Moore was not aware of her right to assert her claim for additional PIP benefits until October 22, 1980, and it was impossible for her to comply with the date set by the courts, May 1, 1980. This argument has been decided adversely to the claimant by the Supreme Court in *Georgia Farm Bureau Mut. Ins. Co. v. Musgrove*, 254 Ga. 333, 335 (328 SE2d 565) wherein it was held: "Even though the *Jones* decision may have alerted the [claimant] to their claim for additional optional benefits, the [claimant] could have discovered the claim for themselves prior to the *Jones* decision." Accordingly, Moore had a viable claim beginning with the date of the accident, May 10, 1978 (*Bryant*, supra), and could have filed with the GIIP on or before May 1, 1980, as ordered by the court.

On the facts before us, i.e., the right of a claimant to participate in distribution of the assets *during* the liquidation, we find that the claimant did not properly present a claim within the time specified in the order, and would be barred from participation in distribution of assets *if* the Ancillary Receiver has complied with the statutory and court ordered requirements of notice; i.e., notice by first class mail of the insurer's insolvency to all persons known or reasonably expected to have or be interested in claims against the insurer (OCGA § 33-36-8), and publication in a newspaper having general circulation throughout the state, for four consecutive weeks, a notice describing the procedure and deadline for filing of any claim. Those facts pertaining to notice are not in the record before us. Hence, the trial court's denial of summary judgment will be affirmed because of the lack of a showing by movant that it had complied with the statute and the trial court's order as to notice requirements to potential claimants.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

Decided June 24, 1985 —<br>Rehearing denied July 11, 1985 —

*Stanley Thomas Snellings, W. C. Brooks*, for appellant.
*William D. Sparks*, for appellees.